

FILED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE _3_,_20_,_00_
BY _____

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **JOEL A. MORVANT, SR.,** | * | **CIVIL ACTION NO.: CV99-1427** |
| **MONICA MORVANT,** | | |
| **JOEL A. MORVANT, JR., AND** | * | **SECTION L-O** |
| **RIDGE M. MORVANT** | | |
| | * | |
| **VERSUS** | | |
| | * | **JUDGE TUCKER L. MELANCON** |
| **L&L SANDBLASTING, INC. and** | | |
| **CXY ENERGY INC.** | * | **MAGISTRATE METHVIN** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MOTION FOR SUMMARY JUDGMENT
### ON BEHALF OF CXY ENERGY INC.

**NOW INTO COURT,** through undersigned counsel, comes defendant, CXY Energy Inc., and moves this Court for summary judgment on the grounds that there are no genuine issues of material fact; that plaintiff, Joel A. Morvant, Sr., is CXY Energy Inc.'s borrowed servant; that CXY Energy Inc. is tort immune as plaintiff's borrowing employer; and that defendant is entitled to judgment in its favor as a matter of law, as is set forth more fully in the attached Memorandum in Support of Motion for Summary Judgment.



CXY Energy Inc. attaches Exhibits A, B, C and D to this motion and prays that each exhibit is made part of and incorporated into this motion.

Respectfully submitted:

ADAMS AND JOHNSTON

BRUCE R. HOEFER, JR., T.A. (#6889)
ANNE DERBES KELLER (#20584)
601 Poydras Street, Suite 2490
New Orleans, LA 70130
Tele: (504) 581-2606
Fax: (504) 525-1488
Counsel for CXY Energy Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have on this 17th day of March, 2000, served a copy of the above and foregoing pleading on counsel for all parties to this proceeding by placing a copy of same in the United States Mail, properly addressed and postage pre-paid.

BRUCE R. HOEFER, JR.

FILED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 3 , 20 , 00
BY ____ert____

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **JOEL A. MORVANT, SR.,** | * | **CIVIL ACTION NO.: CV99-1427** |
| **MONICA MORVANT,** | | |
| **JOEL A. MORVANT, JR., AND** | * | **SECTION L-O** |
| **RIDGE M. MORVANT** | | |
| | * | |
| **VERSUS** | | |
| | * | |
| | | **JUDGE TUCKER L. MELANCON** |
| **L&L SANDBLASTING, INC. and** | | |
| **CXY ENERGY INC.** | * | **MAGISTRATE METHVIN** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF CXY ENERGY INC.

MAY IT PLEASE THE COURT:

Defendant, CXY Energy Inc. ("CXY"), is entitled to dismissal from this litigation as a matter of law. At all times pertinent hereto, the plaintiff, Joel A. Morvant, Sr., (hereinafter "Morvant" or "plaintiff") was the "borrowed servant" of defendant, CXY. Accordingly, plaintiff's tort action against CXY is barred. Plaintiff's exclusive remedy against CXY is for compensation pursuant to the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 USC §§ 901-950, and/or the Louisiana Workers Compensation Act, LSA-R.S. §§ 23:1021-1379.

The facts material to CXY's Motion for Summary Judgment based on the "borrowed servant"

doctrine are undisputed. These facts, when applied to the nine-factor test established in *Ruiz v. Shell*

*Oil Co.*, 413 F.2d 310 (5 Cir. 1969), unequivocally establish that plaintiff was the borrowed servant

of CXY. Accordingly, summary judgment is appropriate.

> The District Court decides the borrowed employee issue as a matter of law, *Gaudet v. Exxon Corp.*, 562 F.2d 351, 357-58 (5th Cir. 1977), and, if sufficient basic factual ingredients are undisputed, the court may grant summary judgment. *Id.* at 358-59. "Appellants cannot generate a factual dispute merely by contesting the conclusions reached by the court, rather they must show that genuine disputes exist over enough determinative factual ingredients to make a difference in this result." *Id.* at 358.

*Capps v. N.L. Baroid-NL Industries, Inc.*, 784 F.2d 615, 617 (5th Cir. 1986).

I.

**FACTS**

A. Uncontested Material Facts

1) Plaintiff Morvant claims to have been injured while working aboard CXY Energy Inc. Eugene Island Platform 259"B" at 12:15 a.m. (0015 hours) on August 8, 1998. (Deposition Exhibit 1 of Joel A. Morvant, 2/23/00) (Exhibit A)

2) Plaintiff Morvant was first employed as a production operator by C&D Production Specialists Company, Inc. in 1996. (Deposition of Joel A. Morvant, 2/23/00, pages 21-22) (Exhibit A)

3) C & D Production Specialists Company, Inc. assigned him to work for CXY Energy Inc. four to five months after he was first hired by C & D. (Deposition of Joel A. Morvant, 2/23/00, page 23) (Exhibit A)

4) Plaintiff Morvant understood that he would be working with CXY Energy Inc. until further notice. (Deposition of Joel A. Morvant, 2/23/00, page 40-41) (Exhibit A)

2

5)    At the time of his alleged accident, 8/8/98, plaintiff Morvant had been working in CXY Energy Inc.'s Eugene Island field for approximately two (2) years as a production operator. (Deposition of Joel A. Morvant, 2/23/00, page 24) (Exhibit A)

6)    CXY Energy Inc. assigned plaintiff Morvant to CXY Platforms 259"C" and 259"A" prior to assigning him to 259"B". (Deposition of Joel A. Morvant, 2/23/00, page 24) (Exhibit A)

7)    Plaintiff Morvant reported to his supervisor, Mike King, senior production operator for CXY Energy Inc. (Deposition of Joel A. Morvant, 2/23/00, page 25) (Exhibit A)

8)    CXY Energy Inc. provided plaintiff Morvant with all instructions for his work as a production operator on CXY platforms. (Deposition of Joel A. Morvant, 2/23/00, pages 41 and 286) (Exhibit A)

9)    Plaintiff Morvant relied solely on CXY Energy Inc. to provide him with his job duties as production operator on CXY platforms. (Deposition of Joel A. Morvant, 2/23/00, page 286) (Exhibit A)

10)    Plaintiff Morvant performed his work according to orders from CXY Energy, Inc. (Deposition of Joel A. Morvant, 2/23/00, page 180) (Exhibit A)

11)    CXY Energy Inc. had the right to discharge plaintiff Morvant. (Deposition of Joel A. Morvant, 2/23/00, page 181) (Exhibit A)

12)    Plaintiff Morvant was subject to discharge by CXY Energy, Inc. if he failed to follow CXY's rules. (Deposition of Joel A. Morvant, 2/23/00, page 256) (Exhibit A)

13)    While working in CXY Energy Inc.'s Eugene Island field, the only reason plaintiff Morvant went to C&D's office was to drop off time tickets. (Deposition of Joel A. Morvant, 2/23/00, page 40) (Exhibit A)

3

14) Plaintiff Morvant had to have CXY Energy Inc. approve his time sheets before he could take them to C&D Production Specialists, Inc. to be paid. (Deposition of Joel A. Morvant, 2/23/00, page 181-182) (Exhibit A)

15) CXY Energy Inc. provided work evaluations regarding the work performance of plaintiff Morvant. (Deposition of Joel A. Morvant, 2/23/00, page 189-190) (Exhibit A)

16) No one from C&D Production Specialists Company, Inc. was ever on the platforms with plaintiff Morvant to observe his work performance. (Deposition of Joel A. Morvant, 2/23/00, page 189-190) (Exhibit A)

17) The work evaluations of plaintiff Morvant prepared by CXY Energy Inc. provided the basis for his promotions. (Deposition of Joel A. Morvant, 2/23/00, page 194) (Exhibit A)

18) Plaintiff Morvant was subject to being reprimanded, and had in fact been reprimanded, by CXY Energy, Inc. supervisors. (Deposition of Joel A. Morvant, 2/23/00, pages 191-193) (Exhibit A)

19) CXY Energy Inc. provided the equipment necessary for plaintiff Morvant to perform his work as production operator on CXY platforms. (Deposition of Joel A. Morvant, 2/23/00, page 32) (Exhibit A)

20) As the production operator for CXY Platform 259"B", plaintiff Morvant was responsible for providing information regarding platform 259"B" for inclusion in CXY's morning reports. (Deposition of Joel A. Morvant, 2/23/00, p. 34) (Exhibit A)

21) Platform 259 "B," the location of plaintiff's alleged accident, was located on the Outer Continental Shelf off the coast of Louisiana. (Plaintiff's Complaint for Damages Par. IV.) (Exhibit B)

22) CXY and C&D Production Specialists Company, Inc. entered into a Master Service Agreement dated October 18, 1995 that was in force and effect at the time of plaintiff's alleged accident. (Exhibit C)

4

II.

## BORROWED SERVANT DOCTRINE

The United States Fifth Circuit Court of Appeals has outlined nine factors to be evaluated in

determining whether the borrowed servant doctrine applies:

(1)    Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2)    Whose work is being performed?

(3)    Was there agreement, understanding, or meeting of the minds between the original and the borrowed employer?

(4)    Did the employee acquiesce in the new work situation?

(5)    Did the original employer terminate his relationship with employee?

(6)    Who furnished tools and place of performance?

(7)    Was the new employment over a considerable length of time?

(8)    Who had the right to discharge the employee?

(9)    Who had the obligation to pay the employee?

See *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312-13 (5th Cir. 1969); *Melancon v. Amoco Production Co.,*

834 F. 2d 1238, 1244 (5th Cir. 1988); and *Capps v. N.L. Baroid NL Industries, Inc.*, 784 F.2d 615, 616-

17 (5th Cir. 1986).

In *Capps*, the court held: "While the courts do not use a fixed test and do not decide the issue

based on one factor, the courts place the most emphasis on the first factor, control over the employee."

*Capps*, 784 F.2d at 617.  See also *Hebron v. Union Oil Co. of California*, 634 F.2d 245, 247 (5th Cir.

1981) (per curiam).

5

1.      ***Who has control over the employee and the work he is performing
        beyond the mere suggestion of details or cooperation?***

Plaintiff Morvant had been working as a production operator for CXY in its Eugene Island

Field for approximately two years before his alleged accident.  During that time, CXY assigned

plaintiff to CXY platforms 259"C" and 259"A" before assigning him to 259"B", the platform upon

which he claims to have been injured.  According to plaintiff's deposition testimony, prior to his

accident, CXY advised him that he would be moved from the 259 field to the 258 field.

> Q.    How long had you been working with CXY before the accident
>       happened?
>
> A.    About two years.
>
> Q.    Now, tell me, can you identify the platforms in any way that you were
>       assigned to for CXY?
>
> A.    I started off at 9 Charlie, 259 Charlie, Eugene Island.  I started off at
>       night.  I worked nights for eight months by myself.  They took me and
>       sent me to 9 Alpha, 59 Alpha.  I worked that by myself.  And from
>       there they sent me to 259 Baker.
>
> Q.    How long were you on Alpha before they moved you over to 259
>       Baker?
>
> A.    Oh, about six months.
>
> Q.    So you started off on the Eugene Island platforms?
>
> A.    Yes, ma'am.  I was about to go to the other side of the field, 258 field.
>
> Q.    Who told you you were going to go to 258 field?
>
> A.    Mike King.
>
> Q.    Now, he's with CXY; correct?

A.      Yes, ma'am.

Q.      And what's --

A.      He's senior production operator.

Deposition of Joel Morvant, 2/23/00, p. 24-25.

Plaintiff went on to state that Mike King was one of the two CXY senior production operators to whom he reported.  If either of the two CXY senior production operators were out for any reason, including vacation, he would then report to the regular CXY field operator.  At the time of his accident, Francis Gary, was the regular CXY field operator from whom he was taking his directions.

Q.      And you reported to him [Mike King].

        Was he always on the same tour–not tour be the same shift that you were on?

A.      Yes, ma'am.  Theirs was split with ours.  They broke on Tuesdays. We broke on Thursdays.

Q.      And who was the other senior production operator that you –

A.      Brad Tarpley.

Q.      Now, if either of these gentlemen was out for any reason, vacation, were they every replaced?  Would they get a replacement?

A.      No, ma'am.  The next-in-line would take over.

Q.      And what would that title be of the next person in line?

A.      Regular field operator.

Q.      Do you remember who the field operator was at the time of your accident?

7

A.    Francis Gary.

Q.    So if Mr. King or Mr. Tarpley were not there, you would report to
      Francis Gary?

A.    Yes, ma'am.

Q.    And he would provide you with whatever instructions you needed for
      your work?

A.    Yes, ma'am.

Q.    On the date of the accident, do you know what senior production
      operator was at the 259 field?

A.    It was supposed to be Mike King.  He was on vacation.  So Francis
      Gary was acting senior production operator.

Q.    So that's who you were taking your directions from?

A.    Yes, ma'am.

Deposition of Joel Morvant, 2/23/00, p. 25-26.

At several different points in his deposition, plaintiff left no doubt that CXY provided him with

his job duties as production operator, provided all necessary instructions for his work as a production

operator, and performed his work according to orders from CXY.

Q.    So as far as you were concerned, any instruction for work, where to go,
      what platform to go to, all of that was directed by CXY?

A.    Yes, ma'am.

Deposition of Joel A. Morvant, 2/23/00, p. 41.

Q.    You go under CXY orders; correct?

8

       A.     Right.  They tell me; I got to do.

Deposition of Joel A. Morvant, 2/23/00, p. 180.

       Q.     You said you didn't rely on C&D to give you job duties.  You relied on CXY to give you your job duties for production operator; didn't you?

       A.     Operating, yes.

Deposition of Joel A. Morvant, 2/23/00, p. 286.

Plaintiff's deposition testimony establishes that CXY had control over all of the work plaintiff was performing on board CXY platforms, particularly platform 259"B" to which he was assigned during the time of his alleged accident.  The only time plaintiff had any occasion to be in contact with the C&D office was to drop off his time tickets to C&D for the work performed on CXY's platform.  No one from C&D was ever on the platform with plaintiff to observe his work, much less give directions.  (Deposition of Joel A. Morvant, 2/23/00 p. 181-182, and p.189-190.)

**2.**    ***Whose work is being performed?***

As the production operator assigned to CXY platform 259"B", plaintiff had the job to make sure that CXY's platform was producing oil and gas.  His job included monitoring the production equipment on the platform for CXY, and either repairing equipment that broke down on the platform or arranging for someone else to fix any broken down equipment he could not repair.

       Q.     Now, tell me in terms that I might understand exactly what a production operator does?

       A.     Production operator takes care of the production and makes sure that the oil and gas is producing.

       Q.     You monitoring gauges?

A.       Monitoring gauges, charts, take shake-out on wells, check for sand, check for calcium chlorite.

Q.       Now, if something breaks down, are you responsible for fixing it, if you can? I mean you are the first person to try and fix this equipment if it breaks down?

A.       All depends on what it is.

Q.       And if its something you can't do, what do you do?

A.       If it was mechanical, I'll call it a mechanic. Electrician, I'll call electrician, you know.

Q.       You'd call back to 258-A to tell them what you needed?

A.       Tell them what the problem was, and they take over.

Deposition of Joel A. Morvant, 2/23/00, p. 32-33.

As the production operator for 259"B", plaintiff was also responsible for providing information regarding platform 259"B" for inclusion into CXY's morning reports. (Deposition of Joel A. Morvant, 2/23/00, p. 34.) All of plaintiff's work, from the time he was first assigned to work for CXY, was done for, and at the direction of, CXY.

Furthermore, as was the case in *Capps*, *supra*, plaintiff's lending employer was in the business of providing personnel to borrowing employers as needed.

Q.       . . .
         C&D Production, tell me what their work involves. What does C&D Production do?

A.       They have different -- They have mechanics, electricians, different type gaugers, pumpers, operators.

10

Q.     And am I correct in that they would contract their people out to other
       entities to perform whatever services are needed, whether its
       mechanical or production operator?

A.     Yes, ma'am.

Deposition of Joel A. Morvant, 2/23/00, p. 35-36.

        The court in *Capps, supra,* determined that plaintiff, Capps, was the borrowed employee of

defendant, Baroid, where plaintiff's payroll employer, Davis, was in business to furnish employees

to other companies so that the employee could perform the work of the borrowing employer.

Accordingly, the *Capps* court determined that the work of Baroid, the borrowing employer, was being

performed at the time of the accident. *Capps*, 784 F.2d at 617. The same result must be reached in

the present case.

**3.      Was there an agreement, understanding, or meeting of the minds between
         the original and the borrowed employer?**

        CXY and C&D entered into a Master Service Agreement dated October 18, 1995 (Exhibit C).

Paragraph 3 of the Master Service Agreement provided that C&D was an independent contractor and

that CXY would have "no power or authority to direct, supervise or control" C&D's employees.

Nevertheless, CXY maintains that this contract provision does not preclude a finding that plaintiff was

*de facto* CXY's borrowed employee. In *Melancon v. Amoco Production Co.*, 834 F.2d 1238 (5th Cir.

1988), the court found that the parties had impliedly waived a similar contract provision through their

actions and affirmed the borrowed employee status.

        Provision 6 of the "Well and Lease Service Master Contract" does specify that no
        Beraud employee is to be considered the agent, servant, or representative of Amoco.
        The reality at the worksite and the parties' actions in carrying out a contract, however,
        can impliedly modify, alter, or waive express contract provisions. [Citations omitted]

11

> In the case at bar, Beraud clearly understood that Melancon would be taking his instructions from Amoco, notwithstanding Provision 6 of the contract. Obviously parties to a contract cannot automatically prevent a legal status like "borrowed employee" from arising merely by saying in a provision in their contract that it cannot arise. We agree with the district court that there was an understanding between Beraud and Amoco sufficient to satisfy this factor.

*Id.* at 1245.

The undisputed facts herein likewise establish that CXY and C&D impliedly, if not expressly, waived the independent contractor provision of the Master Service Agreement. C&D exercised no control whatsoever over plaintiff or plaintiff's working conditions. Plaintiff did not rely on C&D to provide him with his job duties, but rather relied solely on CXY for all of his instructions and orders for work. (Deposition of Joel A. Morvant, 2/23/00, pp. 41, 180, and 286.) C&D was never present on any of the platforms where plaintiff was working for CXY and relied on CXY to provide evaluations regarding plaintiff's job performance. (Deposition of Joel A. Morvant, 2/23/00, pp. 189-190 and 194.) The only contact between plaintiff and C&D was when plaintiff dropped off his time tickets that had previously been approved by CXY. (Deposition of Joel A. Morvant, 2/23/00, pp. 189-190 and 181-182.) Plaintiff reported to CXY personnel and considered certain CXY personnel as his supervisors. (Deposition of Joel A. Morvant, 2/23/00, pp. 25-26.) Plaintiff had been working for CXY for two years and understood that he would be working with CXY until further notice. (Deposition of Joel A. Morvant, pp. 21-22 and 40-41.) The fact that this working situation existed for at least two years and the fact that C&D continued to pay plaintiff in accordance with the CXY approved time sheets evidences that CXY & C&D had a "meeting of the minds" that modified the contract.

12

**4.**   *Did the employee acquiesce in the new work situation?*

The length of time that plaintiff worked in CXY's Eugene Island Field (2 years), and his description of the various platforms to which he was assigned by CXY, shows that the plaintiff acquiesced "in the new work situation." (Deposition of Joel A. Morvant, 2/23/00, p. 24.)  And, plaintiff clearly stated his awareness regarding his work with CXY:

> Q.    And was it your understanding that until further notice you were going to be working with CXY?
>
> A.    Yes, ma'am.

Deposition of Joel A. Morvant, 2/23/00, page 40-41.

Furthermore, as reflected above, plaintiff was aware of the fact that his payroll employer, C&D, was in the business of contracting out its employees to other entities to perform whatever services were needed by the various entities. (Deposition of Joel A. Morvant, 2/23/00, p. 35-36.) Plaintiff was aware that C&D would be sending him into new work situations.  When he was initially hired with C&D, he was sent to work on Shell platforms.  He was subsequently taken off of the Shell platforms and sent to work as a production operator for CXY.  (Deposition of Joel A. Morvant, 2/23/00, p. 23.)

**5.**   *Did the original employer terminate his relationship with employee?*

In *Capps v. N.L. Baroid-NL Industries, Inc., supra,* the Fifth Circuit stated that this factor does not require "a lending employer to completely sever his relationship with the employee." *Capps,* 784 F.2d at 617.  The court added: "The emphasis when considering this factor should focus on the lending employer's relationship with the employee while the borrowing occurs." *Id.* at 618.

13

With regard to the relationship between plaintiff and C&D, the only contact plaintiff had with C&D was when he dropped off his time tickets.  All of his instructions for work, including where to perform the work, evaluations for work performance, and the detail of his job duties were provided by CXY.  Plaintiff stated that no one from C&D was ever on the CXY platforms with him to observe his work.

Q.    While you were working in the CXY field, did you ever have reason or occasion to go to C&D's offices for any reason?

A.    Whenever I'd drop my tickets off.

Q.    And when would you do that?

A.    The day I went in.

Q.    And was it your understanding that until further notice you were going to be working with CXY?

A.    Yes, ma'am.

Q.    So as far as you were concerned, any instruction for work, where to go, what platform to go to, all of that was directed by CXY?

A.    Yes, ma'am.

Deposition of Joel A. Morvant, 2/23/00, p. 40-41

Q.    Now C&D didn't actually observe your work at all; did they?

A.    I really couldn't tell you that.

Q.    I mean they weren't ever out there with you?

A.    No.

Q.    Okay.  So did CXY provide–

14

A.     Mr. George[1] provided what you would call --

Q.     Evaluations?

A.     -- evaluations on us.  He would come out and see what we knew and how a platform was ran and what our production rates were, and they went off of that.

Deposition of Joel A. Morvant, 2/23/00, p. 189-190.

Q.     You said you didn't rely on C&D to give you job duties.  You relied on CXY to give you your job duties for production operator; didn't you?

A.     Operating, yes.

Deposition of Joel A. Morvant, 2/23/00, p. 286.

The lack of any working relationship whatsoever between plaintiff and C&D supports a finding that plaintiff was the borrowed employee of CXY.

### 6.     *Who furnished tools and place of performance?*

The plaintiff's accident occurred on CXY platform 259B, where he was assigned to work as a production operator.  His work included monitoring gauges, charts, taking shake-out on wells, and checking for sand and calcium chlorite on board the platform.  With the exception of a pair of pliers

---

[1]In Plaintiff's Answers to Interrogatories (Exhibit D), plaintiff referred to "Mr. George" -- CXY employee -- as someone with knowledge of the facts relevant to the issues of this lawsuit. During his deposition, plaintiff clarified that he was referring to George Hite of CXY: "Q.  Do you have any idea who Mr. George is?  It says the CXY – A.  Mr. George Haik [sic]. (Deposition of Joel A. Morvant, 2/23/00, p. 169.)

and a wrench that were personally provided by the plaintiff, all equipment and tools necessary for plaintiff to perform his work on CXY platforms were available on the platform and was provided by CXY.

> Q.     Is there any special equipment or tools or anything like that that you need to do your work as a production operator?
>
> A.     Other than channel locks and a crescent wrench, pipe wrench, no.
>
> Q.     And those were all available to you on the platform?
>
> A.     Yes, ma'am.
>
> Q.     And that was CXY's tools and equipment that they provided?
>
> A.     Well, the pliers and wrench was mine.  The rest was theirs.

Deposition of Joel A. Morvant, 2/23/00, p. 32.

### 7.     *Was the new employment over a considerable length of time?*

At the time of his alleged accident, 8/8/98, plaintiff had been working in CXY's Eugene Island Field for approximately two years as a production operator.  As recognized in *Capps, supra,* "where the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee..." *Id.* at 618.

### 8.     *Who had the right to discharge the employee?*

The deposition testimony of the plaintiff establishes that CXY had the right to discharge the plaintiff, and that at one time the plaintiff felt that CXY was in fact considering firing him.

> Q.     So CXY had the right to fire you and tell you where to go is what you are telling us?

16

A.      Right.

Deposition of Joel A. Morvant, 2/23/00, p. 181.

Q.      Did you at anytime feel that CXY was considering firing you?

A.      At one time, yes.

Deposition of Joel A. Morvant, 2/23/00, p. 94.

Q.      Mr. Morvant, "Yes" or "No" answer.

        Is it your understanding that you were required to follow CXY rules or
        face discharge by CXY?

A.      "Yes" or "No" answer?  Well, I'll give your answer that you want.

Q.      I want the truth.
        . . .

THE WITNESS:

A.      Yes.  They was going to let me go.

Deposition of Joel A. Morvant, 2/23/00, p. 256.

This factor will support the application of the borrowed servant doctrine when the borrowing

employer has the right to terminate the employee services with itself.  In *Hebron v. Union Oil Co. of

California*, 634 F.2d 245 (5th Cir. 1991) (per curiam), the court held: "Although Union Oil [the

borrowing employer] could not discharge Hebron, it had the right to terminate his services with Union

Oil."  *Id.* at 247.  See also, *Capps v. N.L. Baroid - NL Industries, Inc.*, 784 F.2d at 618.

**9.      *Who had the obligation to pay the employee?***

While the plaintiff actually received his paycheck from C&D, the plaintiff's time sheets had

to be approved by CXY.

17

Q.    Did somebody at CXY have to approve your time sheets?

A.    That's right.

Q.    And then you would take that time sheets to C&D?

A.    C&D.

Q.    The check–you got your check from C&D; correct?

A.    Right.

Q.    But it was CXY who had to approve your time?

A.    Right.

Deposition of Joel A. Morvant, 2/23/00, p. 181-182.

Furthermore, plaintiff's testimony established that CXY's work evaluations on plaintiff's work performance provided the basis for plaintiff's promotions.  (Deposition of Joel A. Morvant, 2/23/00, p. 194.)

The fact that an employee receives his paycheck from the lending employer, in this case C&D, will not detract from a finding of borrowed servant status where the borrowing employer approves the time sheets submitted by the employee for payment and where the borrowing employer pays to the lending employer the hourly rate for that employee. See, *Capps v. N.L. Baroid - NL Industries, Inc.*, 784 F.2d at 618, and *Ryder v. Pool Offshore Co.*, 987 F.Supp. 943, 946 (E.D. La. 1997).

III.

## CONCLUSION

Defendant, CXY Energy Inc., has set forth undisputed facts that, when applied to the nine factor test outlined by the United States Fifth Circuit Court of Appeals, establishes that the plaintiff,

Joel A. Morvant, Sr., was CXY Energy Inc.'s "borrowed servant" at the time of his alleged accident on August 8, 1998.  Therefore, plaintiff's tort action against CXY Energy Inc. is barred and CXY Energy Inc. is entitled to summary judgment dismissing with prejudice plaintiff's suit against it as a matter of law.

Respectfully submitted:

ADAMS AND JOHNSTON

BRUCE R.  HOEFER, JR., T.A.  (#6889)
ANNE DERBES KELLER (#20584)
601 Poydras Street, Suite 2490
New Orleans, LA 70130
Tele: (504) 581-2606
Fax: (504) 525-1488
Counsel for CXY Energy Inc.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have on this 17th day of March, 2000, served a copy of the above and foregoing pleading on counsel for all parties to this proceeding by placing a copy of same in the United States Mail, properly addressed and postage pre-paid.

BRUCE R. HOEFER, JR.

19

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# <u>LAFAYETTE-OPELOUSAS</u> DIVISION

## <u>NOTICE OF DOCUMENTS NOT FILED IN RECORD</u>

CIVIL NO. 99-1427

JOEL A. MORVANT, ET AL

    VS.

L & L SANDBLASTING, INC., ET AL

ATTACHMENTS TO MEMO IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT ON BEHALF OF CXY ENERGY, INC.

FILED ON 3/20/00  IN THE ABOVE CAPTIONED CASE

HAVE BEEN PLACED IN AN ACCORDION FOLDER.

*Emily R. Boudreaux*
DEPUTY CLERK

**FILED**

USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 3 , 20 , 00
BY _____ ew

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **JOEL A. MORVANT, SR.,** | * | **CIVIL ACTION NO.: CV99-1427** |
| **MONICA MORVANT,** | | |
| **JOEL A. MORVANT, JR., AND** | * | **SECTION L-O** |
| **RIDGE M. MORVANT** | | |
| | * | |
| **VERSUS** | | |
| | * | |
| **L&L SANDBLASTING, INC. and** | | **JUDGE TUCKER L. MELANCON** |
| **CXY ENERGY INC.** | * | |
| | * | **MAGISTRATE METHVIN** |

**************************************************************************

<u>**MOTION TO SET FOR HEARING**</u>

CXY Energy Inc. moves this Honorable Court to set CXY Energy Inc.'s Motion for

Summary Judgment for hearing at a date and time selected by the Court.

Respectfully submitted:

ADAMS AND JOHNSTON

_____

BRUCE R. HOEFER, JR. (#6899)
ANNE DERBES KELLER (#20584)
601 Poydras Street, Suite 2490
New Orleans, LA 70130
Tele: (504) 581-2606
Fax: (504) 525-1488
Counsel for CXY Energy Inc.

CERTIFICATE OF SERVICE
I do hereby certify that I have on this 17 day
of March 2000, served a copy of the
foregoing pleading on counsel for all parties to this
proceeding, by mailing the same by United States mail,
properly addressed, and first class postage prepaid.

_____


RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 3 / 20 / 00

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **JOEL A. MORVANT, SR.,** | * | **CIVIL ACTION NO.: CV99-1427** |
| **MONICA MORVANT,** | | |
| **JOEL A. MORVANT, JR., AND** | * | **SECTION L-O** |
| **RIDGE M. MORVANT** | | |
| | * | |
| **VERSUS** | | |
| | * | **JUDGE TUCKER L. MELANCON** |
| **L&L SANDBLASTING, INC. and** | | |
| **CXY ENERGY INC.** | * | **MAGISTRATE METHVIN** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### ORDER

**CONSIDERING THE FOREGOING MOTION** to set CXY Energy Inc.'s Motion for

Summary Judgment for hearing;

**IT IS HEREBY ORDERED** that CXY Energy Inc.'s Motion for Summary Judgment is set

for hearing at _____ o'clock a.m. on the _____ day of _____, 2000 at the Federal

Courthouse in Lafayette, Louisiana, 200 Federal Building, 800 Lafayette Street, Lafayette, Louisiana

70501. There will be no oral argument on CXY Energy Inc.'s Motion for Summary Judgment unless

ordered by the Court in a subsequent Order.

**LAFAYETTE, LOUISIANA, this _____ day of _____, 2000.**

_____
**UNITED STATES DISTRICT JUDGE**