# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **JOEL A. MORVANT, SR.** | **CIVIL ACTION NO. 99-1427** |
| *Individually and o/b/o Joel A. Morvant, Jr.* | |
| *& Ridge M. Morvant* | |
| **MONICA MORVANT** | **JUDGE MELANÇON** |
| *Individually and o/b/o Joel A. Morvant, Jr.* | |
| *& Ridge M. Morvant* | **MAGISTRATE JUDGE METHVIN** |

**VS.**

**L&L SANDBLASTING, INC.**
  *Defendant and Third-Party Plaintiff*

**VS.**

**ROBERT M. HODGE**
  *Third-Party Defendant*

### REPORT AND RECOMMENDATION
### *(Rec. Doc. 102)*

Before the court is a Rule 12(b)(6) motion to dismiss for failure to state a claim filed by third-party defendant Robert M. Hodge on September 10, 2007.[1]  L&L Sandblasting, Inc. opposes the motion,[2] and Hodge has filed a reply.[3]  For the following reasons, **IT IS RECOMMENDED** that the motion be **GRANTED**.

### *Procedural History*

Plaintiff Joel A. Morvant, Sr. contends that on August 8, 1998, while working on a platform for C&B Production Specialists, Inc., he tripped and fell on a misplaced steed stud

---

[1] Rec. Doc. 102.

[2] Rec. Doc. 107.

[3] Rec. Doc. 108.

2

belonging to L&L Sandblasting.  Plaintiffs filed suit in this court on August 6, 1999.[4]  L&L is the

sole defendant remaining in the case.[5]

L&L's commercial general liability insurer for the period in question, Legion Indemnity

Company, is insolvent.  As a surplus line carrier, Legion Indemnity is not covered by the

Louisiana Guaranty Association Fund.  On March 15, 2007, L&L filed a third-party complaint

against the insurance agents who allegedly placed the policy with Legion Indemnity Company

rather than Legion Insurance Company, a covered carrier, and failed to notify L&L of the

difference.[6]

Plaintiffs also named as a third-party defendant attorney Robert M. Hodge, alleging as

follows:

> THAT IN THE EVENT AND ONLY IN THE EVENT THAT THE
> CLAIM AGAINST THIRD PARTY DEFENDANTS, ROSENTHAL AND
> GAULT IS NOT SUCCESSFUL, THEN AS AN ALTERNATIVE, THIRD
> PARTY PLANTIFF ALLEGES THE FOLLOWING, TO-WIT:
>
> That once Third Party Plaintiff was notified of the insolvency of "Legion"
> in this matter, Third Party Defendant Robert M. Hodge enrolled as counsel for
> L&L Sandblasting and, at all times after notification by the Louisiana Insurance
> Guaranty Association Fund that "Legion" was a surplus line insurer not covered
> by the Fund, that Robert M. Hodge, as attorney for L&L Sandblasting knew or
> should have known of the failure of "Legion" and "The Rosenthal Agency" to
> comply with their duties under Louisiana law in the issuance of the policy and

_____

[4] Plaintiffs filed suit under the Outer Continental Shelf Lands Act, 43 U.S.C. 1331, *et seq*.
and 18 U.S.C. 1331, federal question jurisdiction.

[5] Plaintiffs voluntarily dismissed their claims against the owner of the platform, CXY
Energy, Inc.  The claims were dismissed on May 3, 2000.

[6] The agents named in the third-party complaint were Rosenthal Agency, Inc. and J.
Dale Gault, LLC, and their successors, Hibernia Insurance Agency, Capital One Insurance
Agency, Inc., and Tower Acquisition Company,  LLC.

3

their failure to advise L&L Sandblasting that said coverage was being issued by a surplus line carrier.

(Rec. Doc. 79).  L&L alleges that Hodge was negligent or breached the standard of care in failing to file a third party complaint against Rosenthal and Gault in a timely manner (Id.).

On May 9, 2007, the insurance agents moved to dismiss the third-party claim, arguing that they were perempted under La. Rev. Stat. §9:5606 (Rec. Doc. 86).[7]  On July 19, 2007, the undersigned recommended that the motion be granted (Rec. Doc. 96). Over objection, Judge Melançon dismissed these claims on August 23, 2007 (Rec. Doc. 101).

Now before the court is a motion to dismiss filed by the remaining third-party defendant, Robert M. Hodge.

### *Motion to Dismiss Standard*

---

[7] Section 5606 of Title IX of the Louisiana Revised Statutes establishes preemptive periods for contract and tort actions brought against insurance agents.  Sections (A) and (D) of the statute state as follows:

> (A) No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue *within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered.  However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.*
> [. . .]
>
> D. *The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.*

La. Rev. Stat. §9:5606(A) & (D) (emphasis added).

4

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000), citing Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir.1982). Such motion "may be granted only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." Meadowbriar Home For Children, Inc. v. G.B. Gunn, et al., 81 F.3d 521, 529 (5th Cir. 1996), citing Bulger v. United States Bureau of Prisons, 65 F.3d 48, 49 (5th Cir. 1995). The district court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. Jefferson v. Lead Industries Ass'n., Inc., 106 F.3d 1245, 1250 (5th Cir. 1996), citing Fernandez-Montes v. Allied Pilots Ass'n., 987 F.2d 278, 284 (5th Cir. 1993); Meadowbriar, 81 F.3d at 529; La Porte Constr. Co. v. Bayshore Nat'l. Bank, 805 F.2d 1254, 1255 (5th Cir. 1996).

### *Law and Analysis*

The issue before the Court is whether L&L has stated a cause of action against Hodge. Hodge contends that L&L cannot show causation of damages because L&L's claim against Rosenthal and Gault was perempted before he enrolled as L&L's counsel on March 16, 2005.[8]

Specifically, as noted in the previous Report and Recommendation, L&L contended the following in its third-party complaint. These allegations are also relevant the instant motion:

1.      that at the time of injury to Morvant, L&L's insurer for commercial liability was Legion Insurance Company;[9]

---

[8] The record reflects that Hodge enrolled as counsel for L&L on March 16, 2005. Rec. Doc. 62.

[9] Morvant alleged he was injured on August 8, 1998.

5

2.      that the Legion policy was purchased by L&L on November 1, 1997;

3.      that the purchase of the Legion policy for the time period of November 1, 1997
        through November 1, 1998 was handled by the Rosenthal Agency, Inc. and J. Dale
        Gault;[10]

4.      that at no time prior to or after the purchase of the coverage was L&L aware that
        the coverage in question was purchased from a surplus line carrier not covered by
        the Louisiana Guaranty Association Fund in the event of insolvency;

5.      that the policy delivered to L&L by Rosenthal and Gault did not contain
        appropriate notice required by Louisiana law that the policy was a surplus line;

6.       that said failure constituted a breach of duty by Gault and Rosenthal to L&L;

7.      that Legion Insurance Company had an order of rehabilitation entered on
        March 28, 2002, declaring Legion to be in rehabilitation and insolvent.[11]

L&L also alleged that :

        . . . the plaintiffs, as a result of the insolvency of "Legion,"sought to take
        advantage of the benefits provided by the Louisiana Insurance Guaranty Fund,
        La. R. S. 22:1375, *et seq*. by making demand upon the Louisiana Insurance
        Guaranty Association and/or its Fund to provide coverage . . .

        As a result of a response from the Louisiana Insurance Guaranty Fund, the
        defendant learned for the first time that Legion Ins. Co. was not its insurer and/or
        that Legion Indemnity Company was a surplus line insurer and . . . no coverage
        was available under the Louisiana Insurance Guaranty Fund Act. [12]

---

        [10]  L&L alleges that Rosenthal was merged into Hibernia Insurance Agency, L.L.C and/or
Tower Acquisition Company, or alternatively, that at some point after September 2001, Capital
One Insurance Agency became a successor to the Rosenthal Agency and that Hibernia and/or
Tower and/or Capital One were legally and contractually liable for the negligence of Rosenthal
and/or Gault.

        [11]  Report and Recommendation, Rec. Doc. 96, pp.2-3.

        [12]  L&L's Third Party Complaint, Rec. Doc. 79, paras. 7, 8.

6

Based on L&L's allegations, the undersigned found, in the report and recommendation issued on July 19, 2007, that the running of peremption as to L&L's claims against the insurance agents started on November 1, 1997, the date the policy was purchased.[13]  Thus, L&L's claims against the insurance agents were perempted in November, 2000.  According to its own allegations, L&L first learned that its insurer was not covered under LIGA *after* the March 28, 2002 declaration of Legion's insolvency when L&L made demand upon LIGA.[14] Approximately three years *after* the declaration that Legion was insolvent, L&L filed a motion to substitute Hodge as counsel of record on March 16, 2005 which was granted on March 18, 2005 (Rec. Doc. 62, 63).[15]

"Under Louisiana law, a plaintiff asserting a legal malpractice claim must prove '(1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence.'"  Stanley v. Trinchard, 500 F.3d 411, 421 (5th Cir. 2007).

_____

[13] The undersigned noted the following (Report and Recommendation, Rec. Doc. 96, p. 7):

> La. Rev. Stat. §9:5606(A) provides for a one-year period to file a claim "*from the date that the alleged act, omission, or neglect is discovered or should have been discovered*."  However, even when a claim is timely filed under this provision, it is perempted if not filed within the alternative three-year period.  The statute explicitly states that "*[i]in all events, such action shall be filed at the latest within three years from the date of the alleged accident, omission, or neglect*."

[14] L&L does not include the date of its demand in its allegations.  In its attachments to its opposition to the insurance agents' motion to dismiss, L&L submits a copy of a February 23, 2006 letter addressed to LIGA, in which its counsel requests that the letter be considered a demand that LIGA assume the defense of L&L in the *Morvant v. L&L* matter as a result of the insolvency of Legion Indemnity.  Rec. Doc. 88, Exh. 1.

[15] Prior to that time, L&L had been represented by W. Gerald Gaudet whom mover states was hired by Legion (Rec. Doc. 102, para. 9).

7

Further, the Louisiana Supreme Court has stated:

> Our jurisprudence has long recognized a major distinction between a statute of
> limitations (prescription) and a peremption. It has been repeatedly held that
> prescription bars the remedy sought to be enforced and terminates the right of
> access to the courts for enforcement of the existing right. A peremptive statute,
> however, totally destroys the previously existing right with the result that, upon
> expiration of the prescribed period, a cause of action or substantive right no longer
> exists to be enforced.

Pounds v. Schori, 377 So.2d 1195, 1198 (La. 1979).  *See also*, Atlas Iron and Metal Co. v. Ashy,

918 So.2d 1205 (La. App. 3 Cir. 2006) (stating that when a prescriptive period is peremptory,

"[t]his means that both the underlying cause of action and the legal right to bring that cause of

action to court dissolve at the end of the specified periods of limitation); Boes Iron Works L.L.C.

v. Galatas,  No. 07-CA-336, 2007 WL 4322056, *5  (La. App. 5 Cir. December 11, 2007).

The thrust of L&L's argument is that Hodge's motion cannot be resolved on the pleadings

as there are factual issues whether its claims against Hodge are perempted under  La. R. S.

9:5605 which establishes peremptive periods for attorney malpractice actions.[16]  According to

---

[16]  (Rec. Doc. 107 at p. 2).  Sections (A) and (B) of La. R. S. 9:5605 provide:

A. No action for damages against any attorney at law duly admitted to practice in
this state, any partnership of such attorneys at law, or any professional
corporation, company, organization, association, enterprise, or other commercial
business or professional combination authorized by the laws of this state to
engage in the practice of law, whether based upon tort, or breach of contract, or
otherwise, arising out of an engagement to provide legal services shall be brought
unless filed in a court of competent jurisdiction and proper venue within one year
from the date of the alleged act, omission, or neglect, or within one year from the
date that the alleged act, omission, or neglect is discovered or should have been
discovered; however, even as to actions filed within one year from the date of
such discovery, in all events such actions shall be filed at the latest within three
years from the date of the alleged act, omission, or neglect.

B. The provisions of this Section are remedial and apply to all causes of action
without regard to the date when the alleged act, omission, or neglect occurred.

8

L&L, the "pertinent issue to be determined is when did the prescriptive period set out in 9:5605 begin to run?"[17] L&L also argues there is an issue as to when L&L acquired knowledge to place a reasonable man on notice that a claim could be made against the insurance agency for failure to properly notify L&L that the policy was issued by Legion Indemnity Ins. Co., a "non-admitted" carrier rather than Legion Ins. Co. an "admitted" carrier. L&L directs the Court to evidence submitted in connection with its opposition to Rosenthal and Gault's motion to dismiss as creating a factual question as to when Hodge or L&L first became aware that its insurer, Legion Indemnity Company, was a "non-admitted carrier."[18] L&L contends that the question when the one and or three-year peremptive periods under La. R. S. 9:5605 began to run cannot be determined on the pleadings but instead evidence on the issue should be allowed.[19] L&L also argues that the doctrine of *contra non valentem* applies and is particularly relevant as L&L is

_____

However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

LSA-R.S. 9:5605 (A) and (B).

[17] L&L's Memorandum, Rec. Doc. 107, p. 2.

[18] This evidence consists of a demand by L&L through its current counsel on LIGA to assume its defense and its response that Legion Indemnity Co. is not covered by the Guaranty Fund. L&L argues that the question of prescription and/or peremption begins to run cannot be determined without the introduction of evidence (See Memorandum, Rec. Doc. 107, p. 4).

[19] L&L's Memorandum, Rec. Doc. 107, p. 5.

9

seeking contribution and/or indemnity from Hodge for claims asserted against it by the plaintiff,

Joel Morvant, which are still being contested.[20]

      L&L's opposition fails to respond to the basis for Hodge's motion.  The issue is not a

question of peremption, but whether L&L's claim must fail because it cannot establish causation

between any act or failure to act by Hodge, and any injury suffered by plaintiffs.

      L&L relies on an attorney malpractice case, Argonaut Great Cent. Ins. Co. v. Hammett,

887 So.2d 704, 706 (La. App. 2 Cir. 2004).  Argonaut is inapposite.  The case giving rise to

Argonaut is Huffman v. Goodman, 784 So.2d 718 (La. App. 2d Cir. 2001), writ denied, 794

So.2d 791 (La. 6/22/01), which was discussed at length in the undersigned's previous report and

recommendation.  In Huffman, the court found the plaintiff's claims against his insurance agent

were perempted under La. R. S. 9:5606's *three year* peremptive period and did not address the

application of the one-year peremptive period.  Argonaut, 887 So.2d at 708.

      In Argonaut, the insurer client brought a legal malpractice claim, alleging its attorneys

failed to timely file its third party claims for negligence and indemnity against the insurance

agent for alleged omissions in the insurance policy.  The attorneys argued that the claim against

the insurance agents was perempted under La. R. S. 9:5606's *one-year* peremptive period *before*

they were hired.  The one-year peremptive period commences on the date the plaintiff discovered

or should have discovered the alleged act, omission or neglect which, in Argonaut,  was the

agent's erroneous issuance of the binder.  The specific issue was when the insurer client,

Argonaut, discovered or should have discovered the agent's erroneous issuance of the binder.

---

[20] Id., pps. 6-7.

10

The court held there were genuine issues of fact as to when prescription began to run as to the one-year period.

Such is not the case before the Court.  Hodge is not relying on La. R.S. 9:5606's one-year peremptive period.  Here, L&L's claim against its insurance agents expired as of November 1, 2000, under the alternative three-year peremptory period, which is not tied to constructive knowledge but begins on the date the binder was issued. Because the peremptive period had already run when Hodge enrolled in 2005, L&L cannot establish causation between their injury and Hodge's actions or inactions.

L&L contends that fraud is an exception to the peremptive periods.  LSA-R.S. 9:5606(C) provides that, "[t]he peremptive period provided in Subsection A . . . shall not apply in cases of fraud, as defined in Civil Code Article 1953."

L&L admits it has not alleged a claim for fraud, but contends that Hodge should have explored and/or raised this claim.[21]  L&L argues, as it argued in its opposition to the insurance agents' motion to dismiss, that there "*may* exist the factual basis for a fraud claim which would have extended the prescriptive period against [the insurance agents] beyond the one-year and three-year periods contained in 9:5606 and those matters need to be decided after adducing some evidence . . . "(emphasis supplied).[22]

L&L contends that, since Judge Melançon denied its request that the insurance agents' motion to dismiss be held in abeyance pending discovery on the issue of fraud, then the "failure

---

[21]  As recognized in the undersigned's report recommending that the insurance agents' motion to dismiss be granted (Rec. Doc. 96, p.7), ". . . [a]s L&L acknowledges in its own brief, fraud has not been pled in this case.

[22]  L&L's Memorandum, Rec. Doc. 107, p. 5.

11

of Robert Hodge to explore the factual basis for such a claim in a timely manner constitutes valid grounds" to deny the instant motion to dismiss.[23]  L&L references its attachments to its earlier memorandum which L&L submits provide a factual basis for a fraud claim.[24]  These attachments include a certificate of insurance given to one of L&L's customers indicating "Legion Insurance Co." as its general liability carrier; a summary of coverage from Gault to L&L dated July 31, 1997 referencing "Legion;" and a schedule of underlying coverage also referencing "Legion Ins." dated January 20, 1998 submitted to L&L.

Clearly, if there were factual and legal support for a claim of fraud against the insurance agents in question, L&L should have raised this claim in the third-party complaint.  Rule 9 of the Federal Rules of Civil Procedure requires that, in alleging fraud or mistake, a party must state the circumstances with particularity. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  The Fifth Circuit has stated, "[d]irectly put, the who, what, when, and where must be laid out *before access to the discovery process is granted*."  Williams v. WMX Technologies, Inc., 112 F.3d 175, 178 (5th Cir. 1997) (emphasis supplied).[25] Articulating the elements of fraud requires a plaintiff to specify the statements contended to be

---

[23] Id.

[24] *See* L&L's Opposition to the insurance agents' Motion to Dismiss, Rec. Doc. 88, Exhibit 3.

[25] "'Rule 9(b) has four purposes: to ensure that the defendant has sufficient information to formulate a defense by having notice of the conduct complained of; to protect defendants against frivolous suits; to eliminate fraud actions in which all the facts are learned after discovery; and to protect defendants from undeserved harm to their goodwill and reputation.'"  Nazareth Intern., Inc. v. J.C. Penney Corp., Inc., No. Civ. A. 304CV1265M,  2005 WL 1704793, *1 (N. D. Tex. July 19, 2005).

12

fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.  Id. at 177.

Here, L&L has not alleged a claim for fraud, and, moreover, other than attaching the referenced documents, has not specified why the statements contained within these documents rise to the level of fraud rather than supporting only a claim for negligence.  *See* Id. at 177-78.

### *Conclusion*

For the foregoing reasons, **IT IS RECOMMENDED** that the court **GRANT** the motion to dismiss filed by third-party defendant Robert M. Hodge.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana, on March 24, 2008.

13

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)